OPINION
{¶ 1} Plaintiffs-appellants, John A. and Paula Brothers, appeal from the judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Morrone-O'Keefe Development Company, LLC, on appellants' negligent misrepresentation cause of action. *Page 2 
 {¶ 2} In July 2001, appellants filed a complaint against appellee alleging fraud, fraudulent misrepresentation, negligent misrepresentation, and mutual mistake. The causes of action concern appellants' real estate transactions in the Marble Cliff Crossing subdivision ("the subdivision"), which appellee was developing. Appellants stated in the factual allegations of their complaint:
 3. On or about July 11, 2000, [appellants] entered into an agreement with [appellee] to purchase Lot 90 in a subdivision known as Marble Cliff Crossing * * *
 * * *
 5. Prior to purchasing the property, [appellants] met with [appellee's] representative, with specific building plans and requested that [appellee] find a piece of property of suitable size and character to meet [appellants'] proposed home. [John Brothers] made it clear that he and his wife required a lot for the construction of their home which would accommodate said plans. After consulting with [appellants], and reviewing the plans, [appellee's] agent represented that Lot 90 was an appropriate lot for the construction of [appellants'] proposed home.
 6. [Appellee] was familiar with the design of the home [appellants] planned to build. Another home of the same design had already been constructed elsewhere in the * * * subdivision.
 * * *
 8. After closing on the purchase of Lot 90 it became known to [appellants] that the house [appellants] intended to construct according to their plans could not fit on Lot 90, largely due to easements and building set back lines applicable to Lot 90, which significantly limited the useable building area within the lot.
 9. In an effort to resolve the problem, [appellee] offered to exchange Lot 90 for Lot 88 in [the subdivision]. [Appellee] also assured [appellants] that their proposed home would fit in and be suitable on Lot 88. However, Lot 88 was also *Page 3 
unsuitable primarily because of a sewer easement that could not be removed.
 {¶ 3} In alleging fraudulent misrepresentation, appellants stated in their complaint:
 14. [Appellee] represented to [appellants] that Lot 90 and Lot 88 would each accommodate their proposed home.
 * * *
 17. [Appellee], aware of both the building plans of the proposed home and the utility and set back lines applicable to Lot 90 and Lot 88, nonetheless knowingly represented that Lot 90 and Lot 88 were suitable for [appellants'] proposed home.
 18. [Appellee's] representations were intended to induce [appellants] to purchase Lot 90 and later to exchange Lot 90 for Lot 88.
 {¶ 4} In alleging negligent misrepresentation, appellants stated in their complaint:
 21. [Appellee's] misrepresentations that Lot 90 was suitable for the construction of [appellants'] proposed home was central to [appellants] being induced to purchase Lot 90. * * *
 {¶ 5} Thereafter, appellee moved for summary judgment on appellants' claims of fraud, fraudulent misrepresentation, and negligent misrepresentation. In seeking summary judgment, appellee argued that the parol evidence rule prohibited oral statements that contradicted the terms of the parties' fully integrated written property agreement. Alternatively, appellee argued that it was unreasonable as a matter of law for appellants to have relied on any statements from any agent of appellee.
 {¶ 6} The trial court concluded that the parol evidence rule prohibited oral statements that contradicted the terms of the parties' written property agreement, and *Page 4 
the trial court granted summary judgment in favor of appellee in regards to the claims of fraud, fraudulent misrepresentation, and negligent misrepresentation. Subsequently, appellants voluntarily dismissed their mutual mistake claim, pursuant to Civ.R. 41(A), and appellants appealed the trial court's summary judgment decision.
 {¶ 7} In Brothers v. Morrone-O'Keefe Dev. Co., LLC, Franklin App. No. 03AP-119, 2003-Ohio-7036 ("Brothers I"), at ¶ 33-34, we concluded that the parol evidence rule did not bar appellants from submitting the necessary evidence to prove their claims. We also noted that:
 Further, the trial court's decision erroneously includes [appellants'] claims with regard to Lot 88 in its analysis of the purchase contract for Lot 90. [Appellants] claim fraud and misrepresentation not only with regard to * * * assurances [from any agent of appellee] that [appellants'] intended home would fit on Lot 90, but also as to similar statements made in connection with Lot 88. However, the parties did not execute a separate written contract for the purchase of Lot 88. As such, there exists no written provisions or integration clause in connection with the parties' arrangement to substitute Lot 90 for Lot 88. Accordingly, the parol evidence rule cannot apply to [appellee's agents'] statements as to the proposed home fitting on Lot 88. Therefore, [appellants] should have been permitted to adduce such evidence in support of their claims of fraud and misrepresentation as to Lot 88; therefore, summary judgment was inappropriate.
Id. at ¶ 34.
 {¶ 8} Lastly, we rejected appellee's argument that it was unreasonable as a matter of law for appellants to have relied on any alleged statements from appellee's agents. Id. at ¶ 35-37. Accordingly, we reversed the trial court's summary judgment decision, and we remanded the matter for further proceedings. Id. at ¶ 38. *Page 5 
 {¶ 9} On remand, a bench trial ensued. At trial, John Brothers testified, in pertinent part, to the following. Appellants wanted to move into the subdivision. Appellants wanted a house like the one in the subdivision that their friends Wiley and Rita Secrest purchased, except that appellants wanted a three-car garage instead of the two-car garage that was attached to the Secrest house. In early 2000, appellants met with Joseph Morrone ("Morrone"), an agent for appellee, and appellants told Morrone that they wanted to build a house virtually identical to the Secrest house with a three-car garage on it.
 {¶ 10} John Brothers also testified that "with our desire for a three-car garage, [Morrone] showed us a few of the wider lots" including "94 and 92, 91, 90[.]" (Vol. I Tr. at 250.) Ultimately, according to John Brothers, Morrone offered to sell to appellants Lot 90, an 80-foot lot. John Brothers testified that Morrone told appellants: "[H]ere's the lot that I'm reserving for you, we will build the Secrest house on it." (Vol. II Tr. at 430.) John Brothers also testified that, when Morrone made that comment, "I think [Morrone] used the words, it will be perfect." (Vol. II Tr. at 430.) John Brothers also testified that "[i]t was a given the Secrest house would * * * fit on Lot 90" and "[i]t was never discussed that there might be a problem with the house fitting on the lot." (Vol. II Tr. at 291, 381.)
 {¶ 11} John Brothers then testified as follows. In July 2000, appellants signed a purchasing contract for Lot 90, and, on October 9, 2000, the parties closed on the real estate transaction. Later that month, the parties discovered that appellants' desired house would not fit on Lot 90 due to easements and encumbrances. Thus, Morrone stated that they would exchange Lot 90 for Lot 88, which was 80 feet wide. Although *Page 6 
the parties made plans to build appellants' desired house on Lot 88, the parties signed no contracts or deeds conveying Lot 88 to appellants.
 {¶ 12} John Brothers surmised at trial that Morrone "would have signed in blood * * * that the house would fit on Lot 88[.]" (Vol. II Tr. at 282.) However, John Brothers testified that the parties also discovered that appellants' desired house would not fit on Lot 88 due to easements and encumbrances. As such, appellants ultimately "rescinded" their property transactions with appellee. (Vol. II Tr. at 320.)
 {¶ 13} During his testimony, John Brothers also stated:
 * * * When we filed the suit alleging fraud * * *, I believed that both transactions, 90 and 88, could well have been fraudulent * * *[.]
 * * *
 * * * I guess in retrospect now, * * * I believe that the Lot 90 transaction was negligence on the part of Mr. Morrone.
 * * *
 * * * The second transaction, I believe now with perfect hindsight that Mr. Morrone, aided by [Gary] Wallace [who was to build appellants' home] developed a plan, a scheme to hide from me, deliberately hide from me and my wife the fact that the house didn't fit on the second lot either.
(Vol. II Tr. at 444-445.)
 {¶ 14} Next, the following exchange took place during John Brothers' cross-examination:
 Q. The Secrest house fits on a 60-foot lot?
 A. * * * [T]hat's correct.
 Q. If it fit on a 60-foot lot * * *, it would fit on an 80-foot lot * * *? *Page 7 
 A. According to Mr. Morrone, he said that's correct. He said so more than once.
(Vol. II Tr. at 381-382.)
 {¶ 15} Additionally, the following exchange took place during John Brothers' cross-examination:
 [Q.] On October 9, 2000, you believed or had reason to believe that the house fit on Lot 90, isn't that true?
 A. I believed that all along from April through closing on the lot.
 Q. I understand. One reason you believed it or could have believed it is because you had a set of building plans * * * that showed the house fit on the lot, isn't that right?
 * * *
 A. The answer is no.
 * * *
 A. I am not at all sure that I focused on that site plan[1] until well into the problem areas. There was absolutely no question from April through October that the Secrest house fit on the lot that Joe Morrone was selling to us. There was no question in my mind. There was no question in my wife's mind. There was no question in Mr. Morrone's mind, in my opinion.
 * * *
 A. The site plan wasn't important * * * until later. Site plans weren't important. It was never discussed that there might be a problem with the house fitting on the lot. That was just the furthest thing from everyone's mind * * *.
(Vol. II Tr. at 380-381.) *Page 8 
 {¶ 16} Likewise, the following exchange took place during John Brothers' re-cross-examination:
 [Q.] Dealing with Lot 90, you indicated you now believe that Mr. Morrone was negligent and was not trying to defraud you as to Lot 90, is that my understanding?
 A. Today that is my conclusion. * * *
 Q. As to Lot 88, you have testified that you feel differently about Lot 88 because you believe * * * he schemed to hide from you the fact the house didn't fit on the second lot. Does that sound like what you said?
 A. Yes.
(Vol. II Tr. at 459.)
 {¶ 17} Paula Brothers testified at trial as follows:
 Q. Mrs. Brothers, did you ever at any time prior to October 24th have any concern with regard as to whether or not your house would fit on Lot 90?
 A. None.
 * * *
 A. I relied on the developer and the person who sold us the lot and knowing, knowing that we were trying to build the Secrest house, that it would be a doable project.
(Vol. III Tr. at 575.)
 {¶ 18} Wiley Secrest testified at trial as follows. Appellants were friends with Wiley Secrest and his wife. The Secrests were building a house in the subdivision, and, in 2000, appellants saw the house before it was completed. Subsequently, according to Secrest, John Brothers stated that he was building the same house, only larger. *Page 9 
However, Secrest testified that he did not "know what his intentions were as far as being larger." (Vol. IV Tr. at 793.)
 {¶ 19} Ed Queen built the Secrest house and met with appellants because they were interested in the layout of the Secrests' home. However, upon meeting with appellants, Queen did not have an understanding of what appellants wanted to build.
 {¶ 20} Howard Smith is a friend of appellants and is an architect. Smith prepared some drawings for appellants on their prospective home, but it was Hasbrouck Engineering that ultimately prepared the design document for the construction of appellants' proposed home on Lot 90, including the site plan available at the October 2000 closing. Smith testified that, while he was assisting appellants, appellants had disagreements with Morrone over design details of appellants' desired house. However, Smith testified that he had no way of knowing what Morrone understood they did or did not want to build, and Smith testified that he was "never in any conversations that involved Mr. Morrone and [appellants] regarding what they wanted to build[.]" (Vol. III Tr. at 530.)
 {¶ 21} Lastly, Morrone testified at trial as follows:
 Q. Is there anything that you remember at all today about any specific or special concern that [appellants] had or requests that they had or requirements that they had for a house * * *?
 A. A three-car garage.
 * * *
 Q. In fact, did they not tell you right from the outset, and I'm talking about at the first visit to you in late April of 2000, that the reason why they were at Marble Cliff Crossing was *Page 10 
because of the Secrests' house, and that's what they wanted to duplicate but with a three-car garage?
 A. No.
(Vol. I Tr. at 155-157.)
 {¶ 22} Morrone also testified:
 Q. If [appellants] would have said to you, as you know they said in their testimony to this point, that they wanted to duplicate the Secrest house.
 A. They never told me that.
 Q. I think my question was: If they told you that and if you knew that, could you have or would you have, take it either way?
 * * *
 Q. Could you or would you have sold them Lot 90 as you did with that understanding?
 A. I would have written it in the contract.
 * * *
 A. That the house has to fit in the lot. He didn't know the size of the house they were going to build on the lot. * * *
(Vol. I Tr. at 172.)
 {¶ 23} Similarly, Morrone testified:
 Q. If, in fact, it had been related to you, as [appellants] have maintained consistently throughout this case, that their intent was to duplicate the Secrest house[,] * * * are you with me so far?
 * * *
 Q. — [W]ould you have sold them Lot 90?
 A. No. *Page 11 
 A. It wouldn't have fit on the lot. I would make sure. I didn't know what they were going to build.
(Vol. I Tr. at 175-176.)
 {¶ 24} Next, Morrone testified that the Hasbrouck site plan for Lot 90 was available at the October 2000 closing, but Morrone stated that he did not review the site plan at the closing because the engineers "weren't really done with the plan. They kept saying they had more things to do with it, more tweaks[.]" (Vol. IV Tr. at 730.) However, Morrone testified at trial that, "[l]ooking back on it now, seeing the site plan," the site plan shows appellants' desired house fitting on Lot 90. (Vol. IV Tr. at 733.)
 {¶ 25} Lastly, at trial, Morrone denied that appellants purchased Lot 90 on his recommendation. Morrone also denied that he offered to sell Lot 88 to appellants after the parties discovered that appellants' house would not fit on Lot 90, and Morrone denied that he assured appellants that their desired house would fit on Lot 88. Morrone testified that he did not own Lot 88 and that Gary Wallace both owned Lot 88 and offered to sell appellants Lot 88.
 {¶ 26} After the trial, the trial court asked the parties to submit proposed findings of fact and conclusions of law. Appellants proposed findings of fact and conclusions of law that applied the negligent misrepresentation cause of action to Lots 88 and 90. However, appellee proposed findings of fact and conclusions of law that only applied the negligent misrepresentation cause of action to Lot 90.
 {¶ 27} In January 2005, the trial court rendered judgment in favor of appellee. In pertinent part, the trial court found that Morrone did not know what home the Brothers *Page 12 
intended to build. The trial court also found that John Brothers told Secrest that appellants were building the same house as the Secrests, only larger, and that Secrest did not know what appellants' intentions were, as far as being larger. Similarly, the trial court found that Queen was not sure what appellants intended to build.
 {¶ 28} The trial court also concluded that appellants failed to prove by clear and convincing evidence the fraudulent misrepresentation cause of action in regards to Lot 90. The trial court concluded, in part, that the record evinced no "specific representation" from Morrone that appellants' desired home would fit on Lot 90.
 {¶ 29} The trial court also concluded that clear and convincing evidence failed to prove appellants' negligent misrepresentation cause of action as to Lot 90. Specifically, the trial court concluded that the evidence failed to sufficiently demonstrate that Morrone, an agent of appellee, "supplied false information for the guidance of [appellants] with respect to their purchase of Lot 90." Alternatively, the trial court concluded: "[T]he evidence clearly demonstrates that [appellants] did not rely on any alleged representations of [appellee] or its agents that the proposed home would properly fit within Lot 90. Besides, any reliance is not justifiable since [appellants] failed to reasonably investigate the circumstances themselves, which they clearly had the opportunity to do." After concluding as such, the trial court did not apply the negligent misrepresentation cause of action to Lot 88.
 {¶ 30} Appellants appealed the trial court's January 2005 decision inBrothers v. Morrone-O'Keefe Dev. Co., Franklin App. No. 05AP-161,2006-Ohio-1160 ("Brothers II"). In Brothers II, the appellants raised the following assignment of error, in pertinent part: *Page 13 
 The Trial Court erred in applying the clear and convincing evidence standard of proof to the Brothers' negligent misrepresentation claims.
Id. at ¶ 4.
 {¶ 31} We sustained the above assignment of error, concluding that the preponderance of the evidence standard of proof applied to appellants' negligent misrepresentation cause of action. Id. at ¶ 16-24. Accordingly, we reversed the trial court's January 2005 decision and remanded the matter for further proceedings. Id. at ¶ 29.
 {¶ 32} On remand, the trial court asked the parties to propose additional findings of fact and conclusions of law on the negligent misrepresentation cause of action. Again, appellants proposed findings of facts and conclusions of law that applied the negligent misrepresentation cause of action to Lots 88 and 90. Appellee proposed findings of fact and conclusions of law that only applied the negligent misrepresentation cause of action to Lot 90.
 {¶ 33} In June 2006, the trial court again rendered judgment in favor of appellee. The trial court incorporated by reference its January 2005 findings of fact. The trial court also incorporated by reference its January 2005 conclusions of law, except for such conclusions in regards to appellants' negligent misrepresentation cause of action. The trial court then addressed appellants' negligent misrepresentation cause of action, concluding:
 [Appellants] did not proffer through a preponderance of the evidence that [appellee] supplied false information for the guidance [appellants] with respect to their purchase of Lot 90. *Page 14 
 Assuming arguendo that [appellee] did supply false information to [appellants], [appellants] would still be barred from recovery as the evidence clearly demonstrates that [appellants] did not rely on any alleged representations of [appellee] or its agents that the proposed home would properly fit within Lot 90.
 Furthermore, assuming arguendo that [appellants] relied on such false information (two conclusions that the Court failed to reach) in any event, the Court finds that any reliance claimed by [appellants] was not justifiable as they reasonably failed to investigate the circumstances themselves when they had all of the information before them to determine if the house would fit on the Lot and they had every opportunity to conduct that reasonable investigation.
 Based on the foregoing, [appellants] have failed to prove by a preponderance of the evidence the requisite elements of their negligent misrepresentation claim and, therefore, such claim must be dismissed.
(Emphasis sic.) Lastly, the trial court concluded that the negligent misrepresentation claim was only related to Lot 90 and not to Lot 88.
 {¶ 34} Appellants appeal, raising four assignments of error:
 I. The Trial Court erred in its finding that the negligent misrepresentation claim applied only to Lot 90.
 II. The Trial Court erred in applying the law on justifiable reliance to the negligent misrepresentation claims.
 III. The Trial Court's finding that the Brothers did not justifiably rely on any representations was against the manifest weight of the evidence.
 IV. The Trial Court erred in finding that the Brothers did not proffer evidence that Morrone provided false information for the guidance of the Brothers.
 {¶ 35} Appellants' first assignment of error concerns whether the trial court erred in its June 2006 decision by not applying the negligent misrepresentation cause of *Page 15 
action to Lot 88. In reviewing this assignment, we first address the applicability of the law of the case doctrine. The law of the case doctrine provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3. This doctrine is a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. Id. But, despite the fact that the doctrine is not a binding rule of substantive law, the law of the case satisfies the need "to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." Hubbard ex rel. Creed v. Sauline (1996),74 Ohio St.3d 402, 404; Nolan at 3.
 {¶ 36} Here, appellants contend that we previously recognized the applicability of the negligent misrepresentation cause of action to Lot 88 in our above-referenced quotation in Brothers I at ¶ 34. We find, however, that we made only general references to appellants' misrepresentation claims without differentiating between negligent and fraudulent misrepresentation. Likewise, we did not specify the applicability of the negligent misrepresentation cause of action to Lot 88. Thus, we hold that the above general references to appellants' misrepresentation claims did not establish as the law of the case that appellants' negligent misrepresentation cause of action applied to Lot 88.
 {¶ 37} In further addressing the law of the case doctrine, we note that the doctrine precludes a litigant from attempting to rely on arguments at a retrial when the arguments had been previously fully pursued or could have been pursued in a previous *Page 16 
appeal. See Sauline at 404-405; Federal Financial Co. v. Turner, Mahoning App. No. 05 MA 134, 2006-Ohio-7072, at ¶ 13. Here, on remand from Brothers I, the trial court issued a January 2005 decision that did not apply appellants' negligent misrepresentation cause of action to Lot 88. Thus, in their appeal of the trial court's January 2005 decision inBrothers II, appellants could have raised the applicability of the negligent misrepresentation cause of action to Lot 88, but failed to do so.
 {¶ 38} Appellants contend that they did raise such an argument when they referred to more than one negligent misrepresentation claim in the above-noted assignment of error from Brothers II. However, the above-noted assignment of error from Brothers II raised no challenge to the trial court's failure to apply the negligent misrepresentation cause of action to Lot 88. Thus, in Brothers II, appellants did not raise the applicability of the negligent misrepresentation cause of action to Lot 88, and we conclude that the law of the case doctrine precludes appellants from asserting the issue now.
 {¶ 39} Regardless, as demonstrated below, we conclude that the trial court did not err by failing to apply the negligent misrepresentation cause of action to Lot 88. In so concluding, we first reject appellants' contention that their complaint provided sufficient notice that the negligent misrepresentation cause of action applied to Lot 88. Specifically, appellants argue that their complaint alleged negligent misrepresentation as to Lot 88 by asserting in their statement of facts:
 * * * [Appellee] offered to exchange Lot 90 for Lot 88 in [the subdivision.] [Appellee] also assured [appellants] that their proposed home would fit in and be suitable on Lot 88. However, Lot 88 was also unsuitable primarily because of a sewer easement that could not be removed. *Page 17 
 {¶ 40} Yet, as noted above, when appellants denoted the negligent misrepresentation cause of action in their complaint, they referred to Lot 90 and made no mention of Lot 88. Thus, even construing the complaint liberally, pursuant to Civ.R. 8(F) and 1(B), we conclude that appellants' complaint did not provide notice that their negligent misrepresentation cause of action applied to Lot 88. Next, we reject appellants' argument that the parties impliedly consented to try the negligent misrepresentation cause of action to Lot 88.
 {¶ 41} Civ.R. 15(B) allows parties to try issues not raised in the pleadings upon implied consent. For implied consent to exist under Civ.R. 15(B), "it must appear that the parties understood" that particular evidence at trial "was aimed at the unpleaded issue."State ex rel. Evans v. Bainbridge Twp. Trustees (1983), 5 Ohio St.3d 41,46, citing MBI Motor Company, Inc. v. Lotus/East, Inc. (C.A.6, 1974),506 F.2d 709.
 {¶ 42} Here, the record does not evince the parties' implied consent to apply the negligent misrepresentation cause of action to Lot 88. As an example, John Brothers testified at trial that, while he believed that Morrone was negligent as to Lot 90, as to Lot 88, he believed Morrone "schemed to hide from [him] the fact the house didn't fit on the second lot." (Vol. II Tr. at 459.) We also recognize that, although appellants ultimately proposed findings of fact and conclusions of law that applied the negligent misrepresentation cause of action to Lot 88, appellee did not agree and proposed findings of fact and conclusions of law without applying the negligent misrepresentation cause of action to Lot 88. Thus, based on the above, we conclude that the parties did *Page 18 
not impliedly consent under Civ.R. 15(B) to try the negligent misrepresentation cause of action as to Lot 88.
 {¶ 43} In the final analysis, we need not reverse the trial court's decision to not apply the negligent misrepresentation cause of action to Lot 88. Therefore, we overrule appellants' first assignment of error.
 {¶ 44} We next address appellants' fourth assignment of error, which concerns the trial court's June 2006 decision on the negligent misrepresentation cause of action as to Lot 90. The elements of negligent misrepresentation are:
 * * * "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." * * *
(Emphasis omitted.) Delman v. City of Cleveland Heights (1989),41 Ohio St.3d 1, 4, superseded on other grounds as stated in Sudnik v.Crimi (1997), 117 Ohio App.3d 394, 397, quoting 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1). A negligent misrepresentation cause of action does not lie for omissions; there must be an affirmative false statement. Interstate Gas Supply, Inc. v. Calex Corp., Franklin App. No. 04AP-980, 2006-Ohio-638, at ¶ 91; Manno v. St. FelicitasElementary School, 161 Ohio App.3d 715, 2005-Ohio-3132, at ¶ 34.
 {¶ 45} Here, the trial court concluded in its June 2006 decision:
 [Appellants] did not proffer through a preponderance of the evidence that [appellee] supplied false information for the guidance of [appellants] with respect to their purchase of Lot 90. *Page 19 
 {¶ 46} Appellants contend that:
 A proffer is an offering of evidence. See, Black's Law Dictionary 4th
Edition (1968) at p. 1375. Clearly, this finding by the Trial Court is not supported by the evidence as the Brothers did offer such evidence. * * * Given the accepted meaning of the word "proffer," the Trial Court's finding that [appellants] did not "proffer evidence["] of Morrone providing false information is incorrect as a matter of law, and not supported by the evidence. * * *
 * * *
 * * * Consequently, this finding is against the manifest weight of the evidence as there clearly was false information provided for the guidance of [appellants] * * *.
(Emphasis sic.)
 {¶ 47} We will not reverse a trial court's judgment as against the manifest weight of the evidence if competent, credible evidence supports the judgment. Security Pacific Natl. Bank v. Roulette (1986),24 Ohio St.3d 17, 20; C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 280. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159.
 {¶ 48} Initially, we note that the trial court's statement could be construed as a reference to the lack of evidence that Morrone made any specific representation at all that appellants' desired house, in all of its exact dimensions, would fit on Lot 90. We hold that the record supports the trial court's conclusions of no such "affirmative false statement" as required for a negligent misrepresentation cause of action. See Interstate Gas Supply, Inc. at ¶ 91; Manno at ¶ 34. At most, John Brothers testified that Morrone stated, in regards to Lot 90: "[H]ere's the lot that I'm reserving for you, we will build the *Page 20 
Secrest house on it." (Vol. II Tr. at 430.) However, John Brothers did not convey through such testimony an "affirmative false statement" from Morrone assuring that appellants' desired house would fit on Lot 90; indeed, John Brothers merely added to the above testimony the tentative statement, "I think [Morrone] used the words, it will be perfect." (Vol. II Tr. at 430.) Likewise, John Brothers testified that, "with our desire for a three-car garage, [Morrone] showed us a few of the wider lots[,]" including "94 and 92, 91, 90[.]" (Vol. I Tr. at 250.) Again, such testimony conveyed no "affirmative false statement" from Morrone that appellants' desired house would fit on Lot 90. Additionally, while John Brothers testified that Morrone stated "more than once" that, if the Secrest house would fit on a 60-foot lot, it would fit on an 80-foot lot, such testimony failed to link Morrone's statement to Lot 90, and the statement provided no indication that Morrone was assuring that appellants' desired house, with all of its exact dimensions, would fit on Lot 90. (Vol. II Tr. at 382.)
 {¶ 49} Moreover, we note that "[a] `preponderance of the evidence' is defined in terms of probabilities[.]" Manogg v. Stickle (Dec. 29, 1999), Licking App. No. 99CA56. A preponderance of the evidence is "the greater weight of the evidence * * *. A preponderance means evidence that is more probable, more persuasive, or of greater probative value. It is the quality of the evidence that must be weighed." Id. Thus, through its above statement, we may also properly conclude that the trial court signified that the evidence demonstrated that it was "more probable, more persuasive, or of greater probative value" that Morrone did not make false statements in regards to Lot 90. *Page 21 
 {¶ 50} Again, contrary to appellants' assertions, the trial court's above conclusion is not against the manifest weight of the evidence. Here, Morrone unequivocally testified that, when he sold Lot 90 to appellants, he had made no assurances to appellants that their desired house would fit on Lot 90, and other evidence supports the credibility of such testimony. In particular, Morrone testified that he made no such assurances as to Lot 90 because appellants had not told him the exact details of the house that they wanted to build. The trial court had cause to believe such circumstances given that Secrest, appellants' friend who owned the house they wanted to replicate, and Queen, who built the Secrest house and who met with appellants about the house, also testified that appellants were unclear as to exact details of the house they wanted to build.
 {¶ 51} In so concluding, we note that Smith testified that Morrone had disagreements with appellants over design details of appellants' desired house. However, such testimony has no bearing on Morrone's claim that appellants had not told him the exact details of the house they wanted to build, given that Smith verified that: (1) he had "no way of knowing what Mr. Morrone understood they did or didn't want to build"; and (2) he was "never in any conversations that involved Mr. Morrone and [appellants] regarding what they wanted to build[.]" (Vol. III Tr. at 530.)
 {¶ 52} Consequently, while appellants contend on appeal that they provided evidence on their negligent misrepresentation cause of action to establish that Morrone made false statements in regards to Lot 90, the trial court concluded that the record demonstrated otherwise, and, given our above analysis, we will not undermine the province of the trial court, as trier of fact here, to make credibility and factual *Page 22 
determinations from the evidence. See Kabeer v. Purakaloth, Franklin App. No. 05AP-1122, 2006-Ohio-3584, at ¶ 11-13.
 {¶ 53} Lastly, in concluding that the trial court's above finding is not against the manifest weight of the evidence, we acknowledge that the trial court misused the term "proffer" in its June 2006 decision. The term "proffer" is used in the following manner: "When a court sustains objections to a question[,] a statement must be * * * proffered as to what the expected answer would be in order that a reviewing court can determine whether or not the action of the trial court is prejudicial; and in the absence of a proffer, the exclusion of evidence may not be assigned as error." See State v. Rivers (1977), 50 Ohio App.2d 129,131-132. Nevertheless, we need not reverse the trial court's decision, given that the trial court considered the evidence submitted and properly concluded that a preponderance of the evidence established that Morrone did not make false statements to appellants regarding Lot 90.
 {¶ 54} Accordingly, we hold that the trial court committed no reversible error when it stated that appellants did not "proffer" through a preponderance of the evidence that Morrone made false statements to appellants in regards to Lot 90. Therefore, we overrule appellants' fourth assignment of error.
 {¶ 55} We next address appellants' second assignment of error, in which appellants contend that we must reverse the trial court's judgment because the trial court erred in concluding that their reliance on Morrone's statements was not justified. We disagree.
 {¶ 56} A trial court's error only provides a basis for reversal if the error affects a substantial right of the complaining party. Civ.R. 61;Brothers II at ¶ 26. When *Page 23 
avoidance of the error would not have changed the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party. Fada v. Information Sys. Networks Corp. (1994),98 Ohio App.3d 785, 792; Brothers II at ¶ 26.
 {¶ 57} Here, appellants needed to succeed on each element of their negligent misrepresentation claim to prevail. See Cleveland ClinicFound. v. Commerce Group Benefits, Inc. (Mar. 28, 2002), Cuyahoga App. No. 79907. Through their second assignment of error, appellants only challenged the trial court's conclusion on the justifiable reliance element of negligent misrepresentation. Any decision on such alleged error would still not impact the trial court's judgment against appellants because the trial court also concluded that the record failed to support other elements of negligent misrepresentation, such as Morrone supplying false information. See Civ.R. 61; Brothers II
at ¶ 26. Thus, appellants' second assignment of error provides no cause for us to disturb the trial court's June 2006 decision, and we overrule it.
 {¶ 58} Similarly, in their third assignment of error, appellants contend that we must reverse the trial court's June 2006 decision because it was against the manifest weight of the evidence for the trial court to find that appellants did not justifiably rely on Morrone's representations. We disagree.
 {¶ 59} Again, justifiable reliance is only one element of negligent misrepresentation, and appellants needed to succeed on each element of their negligent misrepresentation claim to prevail. See Cleveland ClinicFound. We have concluded above that it was not against the manifest weight of the evidence for the trial court to find that the record failed to support another negligent misrepresentation *Page 24 
element, i.e., that Morrone made no false statements in regards to Lot 90. Therefore, any conclusion as to whether it was against the manifest weight of the evidence for the trial court to find that appellants did not justifiably rely on Morrone's representations would not impact the trial court's judgment against appellants. Civ.R. 61; Brothers II
at ¶ 26. Thus, appellants' third assignment of error provides no cause for us to disturb the trial court's June 2006 decision, and we overrule it.
 {¶ 60} In summary, we overrule appellants' first, second, third, and fourth assignments of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
KLATT and McGRATH, JJ., concur.
[1] We note that, although not germane for purposes of our review, our appellate record does not contain the site plan exhibits. *Page 1