[Cite as *Myers v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-3862.]

| | |
|---|---|
| CRAIG MYERS | Case No. 2019-00261JD |
| Plaintiff | Magistrate Scott Sheets |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff is an inmate in the custody and control of defendant, Ohio Department of Rehabilitation and Correction (ODRC), at the Allen-Oakwood Correctional Institution (AOCI). He brings this negligence action based on an assault by a fellow prisoner. More specifically, plaintiff's complaint asserts that his cellmate at the time, Brock Daniels (Daniels), assaulted him on July 4, 2017. Plaintiff asserts that, prior to the assault, he notified two corrections officers that he was going to be assaulted. He further alleges that a corrections officer read a note plaintiff authored such that other inmates could hear the contents of the note, which resulted in the assault by Daniels. Plaintiff alleges that ODRC acted negligently in reading the note out loud and in failing to protect him from Daniels.

{¶2} The case proceeded to trial at AOCI. In addition to his own testimony, plaintiff presented the testimony of maintenance repair worker Danny Owens, inmate Michael Simonson, correction officer Angela Martin, and state trooper David Schultz. ODRC presented the testimony of corrections officers David Ashby and Matthew Giddens. For the following reasons, the magistrate finds plaintiff proved his claim by a preponderance of the evidence and recommends judgment in plaintiff's favor.

**Findings of Fact**

{¶3} The magistrate makes the following factual findings and, to a degree, explains the evidentiary bases underlying the findings.  In citing to particular testimony as supporting a factual finding, the magistrate found it credible based on first hand observation.

{¶4} Brock Daniels assaulted plaintiff on July 4, 2017.  In addition to plaintiff's testimony, Simonson, who resided in the same housing unit as plaintiff and was present on July 4, 2017, saw plaintiff emerge from his cell bloody in the face.  In addition to Simonson's testimony, the evidence established that Trooper Schultz's investigation led to criminal assault charges being filed against Daniels.

{¶5} Plaintiff paid no medical bills but did suffer temporary injuries, specifically abrasions and swelling on his head and face as a result of Daniels' assault. Owens testified that, while present at plaintiff's Rules Infraction Board (RIB) hearing shortly after the assault, he observed injuries to plaintiff's face as well as a boot print on the right side of plaintiff's face.  Schultz, who investigated Daniels' assault of plaintiff, testified he reviewed photos of plaintiff's injuries which depicted a swollen forehead, abrasions, red marks, and a missing tooth.  The photos themselves were not presented and plaintiff presented no evidence, other than Owens' testimony, connecting the conditions depicted in these photographs to the assault.

{¶6} Schultz also testified that plaintiff's injuries had mostly healed by the time he met with him, which occurred a few weeks after the assault.  Plaintiff did not present any medical records or other documentary evidence which demonstrated the extent or severity of his injuries.  He presented no medical testimony and failed to describe his injuries.  Plaintiff presented no evidence of medical diagnosis or treatment.

{¶7} Inmates, including Daniels, overtly threatened plaintiff prior to the assault by Daniels, during which time an unknown number of corrections officers were present in the housing unit and, at times, near plaintiff.  Plaintiff and Simonson testified regarding

these threats as well as plaintiff's attempt to communicate with corrections officers Naughten and Woods.

{¶8} Plaintiff failed to establish that corrections officers heard the threats by Daniels or other inmates. The only testimony on the issue came from Simonson who testified that officers should have been aware of the threats because they were obvious and because, in the case of Daniels, an unspecified officer was fifteen feet away when Daniels threatened plaintiff. However, even Simonson admitted that the day room was loud and that he could not be sure that anyone overheard Daniels' threats.

{¶9} Prior to the assault, plaintiff made unspecified statements to corrections officers regarding threats by unspecified inmates; he communicated some degree of apprehension regarding a possible assault, but nothing specific about Daniels. Though both plaintiff and Simonson testified to plaintiff's attempted communications with corrections officers Woods and Naughten about the threats being made and his apprehension of an assault, neither Simonson nor plaintiff testified as to what plaintiff actually told corrections officers on July 4, 2017. Schultz testified that, though plaintiff told him he had expressed concern about an assault, he had not indicated he was going to be assaulted by Daniels.

{¶10} Prior to the assault, plaintiff authored a note regarding an injured inmate, which he passed to correction officer Naughten who read the note aloud in front of other inmates, and this led to the threats by Daniels and other inmates. Plaintiff testified to this fact. In addition, Simonson, Martin and Schultz testified respectively that plaintiff told them the same, consistent story regarding the reading of the note before the assault by Daniels, shortly after the assault by Daniels on the way to the hospital, and weeks later when Schultz interviewed plaintiff about the assault. Further, Martin testified that, at roll call the day following the assault, she and her fellow officers were instructed that, when they receive a "snitch kite" from an inmate, they are never to read it out loud and the officer is to go to a closed off area to read the kite.

{¶11} Though Martin admitted that she did not know the reason underlying this instruction, the fact that the instruction was given the day after plaintiff's assault is compelling circumstantial evidence which indicates that corrections officers read plaintiff's note. It is also important that plaintiff told both Simonson and Martin about the reading of the note before the instruction to officers at roll call the following day; it demonstrates that plaintiff could not have fabricated this story based on the instruction given to officers.

{¶12} ODRC's standard procedure is that corrections officers should read and/or address notes such as the one plaintiff authored outside the presence of other inmates to avoid harm to the author. Martin testified to this procedure and its import.

{¶13} In addition to speaking with a staff member as plaintiff did, there are several other ways an inmate can inform defendant of personal safety concerns which plaintiff did not utilize. Plaintiff never requested protective custody, nor did he file an informal complaint or grievance. Plaintiff also did not "refuse to lock" which would have resulted in plaintiff immediately seeing a shift officer. Ashby testified to these procedures. Plaintiff admitted that he did not use them.

{¶14} ODRC issued both plaintiff and Daniels conduct reports based upon the assault. Giddens testified to this fact

{¶15} Plaintiff averred that Daniels never assaulted him in an affidavit filed in Daniels' criminal case about a year before he filed the present case. Plaintiff admitted he authored the affidavit.

**Conclusions of Law**

{¶16} Plaintiff bore the burden of proving his claim by a preponderance of the evidence. As stated in *Brothers v. Morrone-O'Keefe Dev. Co., LLC,* 10th Dist. No. 06AP-713, 2007 Ohio 1942, 2007 Ohio App. Lexis 1762, ¶ 49: "[a] preponderance of the evidence is 'the greater weight of the evidence * * * [it] means evidence that is more probable, more persuasive, or of greater probative value."

{¶17} "To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom." *Taylor v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-1156, 2012-Ohio-4792, ¶ 15. "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8. "The state, however, is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-442, 2013-Ohio-1519, ¶ 17. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16.

{¶18} "When one inmate attacks another inmate, 'actionable negligence arises only where prison officials had adequate notice of an impending attack.'" *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-222, 2018-Ohio-3870, ¶ 29, quoting *Metcalf v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 01AP-292, 2002-Ohio-5082, ¶ 11; *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 9 ("The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault."). "'Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved.'" *Pate v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 18AP-142, 2019-Ohio-949, ¶ 12, quoting *Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-932, 2016-Ohio-3134, ¶ 11.

{¶19} "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Lucero v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-288, 2011-Ohio-6388, ¶ 18. "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14.

{¶20} "Where it is certain that damages have resulted, mere uncertainty as to the amount will not preclude the right of recovery." *Bemmes v. Pub. Emps. Ret. Sys.*, 102 Ohio App.3d 782, 789 (10th Dist.1995).

**Decision**

{¶21} Upon review of the evidence and in light of the findings of fact and conclusions of law set forth above, the magistrate finds that plaintiff proved his claim by a preponderance of the evidence. Plaintiff was assaulted by his cellmate on July 4, 2017 and sustained injuries as a result. Whether ODRC had notice of an impending assault is the critical issue. The magistrate finds that, though ODRC lacked actual notice of the impending assault, the greater weight of the evidence established that ODRC had constructive notice of an impending assault.

{¶22} Initially, the magistrate finds plaintiff failed to prove actual notice by a preponderance of the evidence. Plaintiff did not use any kite, informal complaint resolution, grievance, or other written means to notify staff members at AOCI that he feared for his personal safety prior to the assault. In terms of written and/or more formal means of providing actual notice, plaintiff provided none. Further, Simonson's testimony and the other evidence established, at most, the possibility that corrections officers overheard other inmates threatening plaintiff; it did not establish actual awareness of the threats being made by inmates. Finally, though plaintiff established

that he made statements to corrections officers regarding threats, plaintiff did not establish the content of these statements; this makes it impossible to determine whether plaintiff's statements conveyed actual notice of an impending assault. *See Baker v. Dept. of Rehab. & Corr.*, 28 Ohio App. 3d 99, 502 N.E.2d 261 (10th Dist.1986) (Vague statements about a need to be moved after being slapped in the face by another inmate where the plaintiff-inmate did not directly express his fear of an impending assault or expressly request protective custody were not sufficient to constitute adequate notice of an impending attack.)

{¶23} The court, however, finds plaintiff established that ODRC had constructive notice of an impending assault.  As stated in *Pate*, whether notice exists depends on all the facts present in a particular case.  Though falling short of establishing actual notice, plaintiff did establish that he twice approached corrections officers regarding threats by other inmates.  He also established that inmates threatened him repeatedly and that corrections officers were present in the housing unit dayroom area while these threats, which were not discrete, continued for an undetermined time.  As Simonson testified, it was "obvious" that other inmates were angry with plaintiff.  Most compelling was the fact that corrections officers read plaintiff's note concerning an injured inmate in front of other inmates which resulted in threats being targeted at plaintiff.  Also, the fact that ODRC did so in violation of its own procedure, which is in place for inmate safety, is also compelling.  Given the existence of this policy, the magistrate finds that reading the note in front of other inmates would put the corrections officers on notice of some danger of assault to plaintiff.  When considered with the threats made by other inmates and plaintiff's attempt to twice inform corrections officers—one of whom read the note— of concerns regarding the threat of an assault, the magistrate finds that ODRC had constructive notice of an impending assault on plaintiff.

{¶24} While it is true that plaintiff authored the affidavit in which he stated the assault never occurred, the court finds plaintiff's affidavit is of little import primarily

because the evidence, including the testimony of Schultz, established that the assault occurred. More importantly, the affidavit in no way contradicts the evidence, including Martin's testimony, establishing that corrections officers read plaintiff's note leading to threats from other inmates.

{¶25} As for damages, plaintiff presented very little evidence. He offered virtually no testimony regarding the actual extent of his injuries, treatment, if any, of these injuries or the impact, if any, that the injuries had on him. Schultz testified to what pictures depicted but did not attribute any specific condition as depicted in these pictures to the assault. Moreover, Schultz testified that plaintiff's injuries had healed by the time he interviewed plaintiff. Therefore, the magistrate values plaintiff's injuries, temporary swelling, and abrasions to his face, at $1,000.00.

**Conclusion**

{¶26} Based upon the foregoing, the magistrate finds that plaintiff proved his claim by a preponderance of the evidence and recommends judgment be entered in plaintiff's favor in the amount of $1,000.00.

{¶27} *Note: the following requirements for filing objections have been tolled by the March 27, 2020 Order of Chief Justice of the Supreme Court of Ohio and the Governor's declaration of a public health emergency until July 30, 2020 or the end of the emergency, whichever is sooner. See 03/27/2020 Administrative Actions, 2020-Ohio-1166.*

{¶28} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely*

*and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*


SCOTT SHEETS
Magistrate

**Filed June 8, 2020**
**Sent to S.C. Reporter 7/28/20**