[Cite as *Gibson v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1028.]

| | |
|---|---|
| REGINALD GIBSON | Case No. 2019-01160JD |
| Plaintiff | Magistrate Scott Sheets |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

**{¶1}** Plaintiff Reginald Gibson (plaintiff) is an inmate in defendant's custody. Plaintiff seeks recovery for injuries he alleges were sustained after his cellmate assaulted him on August 15, 2018. Trial took place remotely on November 8, 2021. In addition to plaintiff, Joanna Factor, Deputy Warden Corey Foster, Brenda Guice, Sergeant Matthew Giddens (Sgt. Giddens), Ira Collier (Mr. Collier), Lieutenant Michael Ledesma (Lt. Ledesma), and Stephanie Dysert, all employees of defendant, testified. In addition, several exhibits were admitted into evidence including plaintiff's institutional medical records and records generated as part of defendant's investigation of the incident. For the following reasons, the magistrate hereby recommends judgment for plaintiff.

**Findings of Fact**

**{¶2}** The magistrate makes the following factual findings. Plaintiff is an inmate in defendant's custody. During July and August of 2018, and while housed at defendant's Allen-Oakwood Correctional Institution (AOCI), plaintiff shared a cell with another inmate, Byron Harrington (Mr. Harrington). On August 15, 2018, plaintiff and Mr. Harrington were in their cell when they got into a fight. Defendant investigated the incident and both inmates were found guilty of rules infractions for fighting by the institution's Rules Infraction Board (RIB). Plaintiff's testimony and multiple exhibits generated as part of defendant's investigation corroborate these facts. Several of defendant's employees

including Sgt. Giddens testified that they became aware of the fight between plaintiff and Harrington.    Additionally, Sgt. Giddens and Lt. Ledesma testified regarding the investigation and RIB proceedings.

{¶3} Mr. Harrington both initiated the fight and acted as the primary aggressor; he assaulted plaintiff.  On August 15, 2018, plaintiff sat on his bed, the top bunk in the cell he shared with Mr. Harrington, while he wrote with a pen and paper.  Mr. Harrington aggressively approached plaintiff, grabbed plaintiff's leg, and pulled plaintiff off the top bunk. While falling, plaintiff scratched Mr. Harrington's neck with a pen with which he was writing.  Plaintiff restrained Mr. Harrington before Mr. Harrington pushed plaintiff who hit his head at some point during the altercation.  After the fight ended, plaintiff alerted a corrections officer to what had occurred and both men were separated and handcuffed. Plaintiff testified to the assault and the magistrate finds his testimony credible as to the facts set forth above.  Plaintiff was the only witness with first-hand knowledge who testified regarding Harrington's assault on him.  In addition, plaintiff's testimony is substantially consistent with the version of events he provided to Sgt. Giddens, during the latter's interview of him after the incident, as reflected in Exhibit A and in the conduct report, Exhibit I.  Plaintiff's testimony is also consistent with his statements at his hearing before the RIB, contained in Exhibit G.

{¶4} To the extent plaintiff injured Mr. Harrington during the latter's assault on plaintiff, plaintiff's actions were in reaction to and in defense of Mr. Harrington's assault on him. Again, plaintiff alone offered first-hand testimony regarding the assault.  Though Sgt. Giddens suggested plaintiff stabbed Mr. Harrington at trial, he was not present when the assault occurred.  Moreover, the opinion Sgt. Giddens offered at trial is inconsistent with the contents of Exhibit A, his interoffice communication to Deputy Warden Foster, generated as part of the investigation of the incident.  It reflects plaintiff's statements to Sgt. Giddens during the investigation.  They are consistent with the facts to which plaintiff testified at trial, specifically that plaintiff scraped or scratched Mr. Harrington with his pen

while being pulled off the top bunk. Exhibit A also contains Sgt. Giddens' opinion, formed at the time of the investigation, that Harrington acted as the aggressor on the day of the assault.

{¶5} Prior to the assault, plaintiff, on at least three occasions spoke to Sgt. Giddens and/or Mr. Collier regarding hostility between he and Mr. Harrington. Plaintiff requested that he be moved to a different cell. Plaintiff testified that he spoke to Mr. Collier and Sgt. Giddens several times in July and August of 2018 about Mr. Harrington threatening him. Exhibit G, plaintiff's statement to the RIB regarding the assault, is consistent with plaintiff's testimony at trial. Exhibit A, which Sgt. Giddens prepared, indicates that he spoke to plaintiff in July of 2018 regarding issues the latter was having with Mr. Harrington, that he directed plaintiff to speak to Mr. Collier and that Mr. Collier spoke to both plaintiff and Mr. Harrington about the situation. Exhibit A also states that on August 15, 2018, the day of the assault, plaintiff sought out Sgt. Giddens because, per plaintiff, he and Mr. Harrington were still not getting along and because Mr. Harrington was "still talking crazy to him." On the day of the assault, plaintiff sent a kite to Mr. Collier regarding the "volatile situation" between he and Mr. Harrington. Though Mr. Collier indicated he did not see this kite on the day of the incident, the kite does corroborate the fact that plaintiff spoke to Mr. Giddens on the day of the assault. Finally, though both Sgt. Giddens and Mr. Collier could not recall the specific number of times they spoke with plaintiff, they also could not deny that he did speak to them on at least three occasions as corroborated by the exhibits cited above.

{¶6} Mr. Harrington also had a history of hostility toward other inmates and staff. Plaintiff and Sgt. Giddens both offered testimony on this fact. Sgt. Giddens' statements in Exhibit A regarding Mr. Harrington's history are consistent with his opinion offered at trial that Mr. Harrington was a "hot-head."

{¶7} As a result of Mr. Harrington's assault, plaintiff suffered a bump on his head, an abrasion to his left shoulder, a small laceration on his right shoulder, and a scratch on

his abdomen.  Plaintiff experienced temporary pain and discomfort from his injuries. Plaintiff testified to hitting his head.  Plaintiff's medical records from AOCI, specifically Exhibits C and D, reflect these physical injuries were present when he was examined immediately after the assault.  Plaintiff experienced temporary pain and discomfort from these injuries including a headache.

{¶8} Shortly after the incident, Plaintiff sought and received treatment for migraine headaches.  Plaintiff continued to receive treatment for migraine headaches after his release from defendant's custody and continued to experience migraines.  However, plaintiff failed to prove that Mr. Harrington's assault caused his migraine headaches or otherwise caused injuries to plaintiff that are permanent, chronic, or continuing.  Plaintiff testified that he experiences continuing migraine headaches that began after the assault, that he continues to receive treatment, and that he is prescribed Imitrex for his headaches. In addition, plaintiff's institutional medical records, Exhibit J, reflect treatment for migraine headaches, including the use of the prescription medication Imitrex.  However, only plaintiff attributed these headaches to the assault, specifically citing the fact that he hit his head during the assault.  Plaintiff is not a doctor and his opinion regarding the cause of his migraine headaches is not credible and is entitled to minimal weight.  Moreover, plaintiff presented no medical expert testimony.  Plaintiff's medical records, Exhibits E and J, include a radiological report from an x-ray of his skull conducted in September of 2018, which found no fractures and concluded that the x-rays of plaintiff's skull were unremarkable.  Exhibits C and D, plaintiff's medical records from the day of the assault describe ostensibly superficial injuries.  The pictures taken as part of Mr. Giddens' investigation of the incident depict minor injuries.  Exhibit G.  Finally, plaintiff's institutional medical records indicate that plaintiff has a medical history that includes pulmonary tuberculosis, hyperlipidemia, other chronic pain, and lipoma which plaintiff did not address in claiming that the assault, as opposed to his other health problems, cause or contribute to his migraine headaches.  In short, though the greater weight of the evidence

established that plaintiff suffers migraine headaches, it did not establish that Mr. Harrington's assault caused plaintiff's migraines.

{¶9} Plaintiff paid nothing for his medical treatment while he was incarcerated including the medical treatment he received immediately following the assault. Plaintiff offered no evidence that he paid any medical expenses.

**Conclusions of Law**

{¶10} Plaintiff's complaint states a claim for negligence. As it relates to claims based on one inmate's assault of another, the 10th District has stated:

> In order to prevail on a claim of negligence, "a plaintiff must establish the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." A plaintiff "has the burden to prove each element of their negligence claim by a preponderance of the evidence."

> In regard to the "custodial relationship between the state and its inmates, the state owes a common-law duty of reasonable care and protection from unreasonable risks of physical harm." Reasonable care is defined as "that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." However, while "prison officials owe a duty of reasonable care and protection from unreasonable risks to inmates, * * * they are not the insurers of inmates' safety."

> * * * [T]his court [has] discussed the legal standard with respect to the liability of ODRC for an assault by one inmate on another. Specifically, we noted "[t]he law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault." Under Ohio law, "[n]otice may be actual or

constructive, the distinction being the manner in which the notice is obtained
rather than the amount of information obtained." *Id.* In this respect, "[a]ctual
notice exists where the information was personally communicated to or
received by the party," whereas "'[c]onstructive notice is that notice which
the law regards as sufficient to give notice and is regarded as a substitute
for actual notice.'" (citations omitted.)

*Morris v. Ohio Dep't of Rehab. & Corr.*, 10th Dist. No. 20AP-131, 2021-Ohio-3803, ¶¶ 30-32.

{¶11} As noted, plaintiff bore the burden of proving his claim by a preponderance
of the evidence. *Id.* As stated in *Brothers v. Morrone-O'Keefe Dev. Co., LLC,* 10th Dist.
No. 06AP-713, 2007-Ohio-1942, 2007 Ohio App. Lexis 1762, ¶ 49: "[a] preponderance of
the evidence is 'the greater weight of the evidence * * * [it] means evidence that is more
probable, more persuasive, or of greater probative value."

{¶12} To establish proximate cause relative to injuries that are "internal and
elusive, and are not sufficiently observable, understandable, and comprehensible"
plaintiff needed to present expert testimony. *See Wright v. City of Columbus,* 10th Dist.
No. 05AP-432, 2006-Ohio-759, ¶ 17-19.

**Decision**

{¶13} The magistrate finds that plaintiff proved his claims by a preponderance of
the evidence. There is no dispute regarding the duty of reasonable care defendant owed
plaintiff. Further, when all of the facts unique to this case are considered, the magistrate
finds that defendant had constructive notice of an impending assault because plaintiff
sought out Sgt. Giddens and Mr. Collier no less than three times regarding hostility
between he and Mr. Harrington and to request a bed move. Further, Sgt. Giddens knew
Mr. Harrington to be a "hot head" and Mr. Harrington also had a reputation for hostility
toward other inmates and staff. Because defendant had constructive notice of Mr.
Harrington's impending assault, it had a duty to protect plaintiff from the assault. It

breached this duty in failing to protect plaintiff from the August 15, 2018 assault. Further, the August 15, 2018 assault proximately caused injuries, which were temporary and minor as set forth herein in the magistrate's findings of facts. Plaintiff paid nothing for the treatment of these injuries. Though plaintiff's injuries were temporary in nature, they did involve pain and discomfort. As such, the magistrate values plaintiff's injuries at $1,000.00.

{¶14} For the reasons stated above, the magistrate recommends judgment in plaintiff's favor in the amount of $1,000.00.

{¶15} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
SCOTT SHEETS
Magistrate

**Filed February 11, 2022**
**Sent to S.C. Reporter 3/29/22**