JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants, Victorina Manno and Michael Yasenchack, appeal from the judgment of the trial court denying their motion for summary judgment and granting, in part, the motion for summary judgment of the defendants-appellees, St. Felicitas Elementary School, Ann Marie Woyma and Fr. Richard Bober. For the following reasons, we affirm.
 {¶ 2} Manno was hired by St. Felicitas School in 1993 as a fourth-grade teacher. She taught at the School without interruption from 1993 until July 8, 2003, when she was terminated by Fr. Bober. In 1998, while teaching at the School, Manno, a baptized Catholic, divorced her first husband, who is also a baptized Catholic. In November 2001, Manno and Yasenchack, also a baptized Catholic, began dating. The two became engaged in December 2002, and married on June 21, 2003.
 {¶ 3} Prior to marrying Yasenchack, Manno investigated the possibility of obtaining an annulment of her first marriage. However, due to her disagreement with the concept of annulments, Manno decided not to obtain an annulment of her first marriage prior to marrying Yasenchack. During the course of her investigation into the process of obtaining an annulment, Manno discussed annulments with Woyma and Martha Dodd, the School's principal and assistant principal, respectively. Specifically, Dodd, who had recently obtained an annulment, discussed the process with Manno, and Woyma told Manno that she could start the proceedings so she could put all this behind her.
 {¶ 4} Manno also discussed annulments with Fr. Neil Walter, an associate priest at St. Felicitas Parish, prior to May 19, 2003, when she and Fr. Bober signed her teaching contract for the 2003-2004 school year. The contract required Manno to "respect the spiritual values of the students and to aid in their Christian formation by exemplifying in [Manno's] own actions the characteristics of Christian living[.]" The contract further required Manno to abide by the rules, regulations and policies of the School as contained in its Faculty Handbook. The Faculty Handbook, of which Manno was provided a copy, states that a teacher may be dismissed for, among other things, behavior that is inconsistent with "the teachings and mission of the Catholic Church."
 {¶ 5} Further, Manno had a discussion with Woyma on June 8, 2003, prior to marrying Yasenchack, during the course of which Manno informed Woyma of her intention to marry Yasenchack that summer. Woyma told Manno that she needed to speak with Fr. Bober. Manno questioned Woyma as to the need to meet with Fr. Bober, to which Woyma responded that she thought it had something to do with cannon law, and offered to set an appointment for Manno with Fr. Bober. Manno declined the offer, and told Woyma she would set an appointment with Fr. Bober on her own.
 {¶ 6} Manno met with Fr. Bober on July 8, 2003, after she and Yasenchack were married. During that meeting, Fr. Bober asked Manno why she had gotten married without first obtaining an annulment of her first marriage, to which Manno responded that she felt an annulment was not in the best interest of her family. Fr. Bober then terminated Manno's contract because of her failure to obtain an annulment of her first marriage prior to marrying Yasenchack. Manno was 47 years old at the time of her termination.
 {¶ 7} After Manno's termination, her fourth-grade position was assumed by then 52-year-old Jane Vajda, who previously taught fifth grade at the School. Vajda was replaced by Lisa Roseberry, who was then 48 years old.
 {¶ 8} Manno filed a complaint in the Cuyahoga County Court of Common Pleas alleging age and gender discrimination, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, breach of contract, implied breach of contract, promissory estoppel and negligent misrepresentation. The complaint also sought punitive damages and asserted a loss of consortium claim on behalf of Yasenchack.
 {¶ 9} Appellees filed a motion for summary judgment as to all of Manno and Yasenchack's claims. Manno and Yasenchack filed a brief in opposition to appellees' motion for summary judgment and a cross-motion for summary judgment as to all of their claims except gender discrimination and negligent infliction of emotional distress, which they voluntarily dismissed.
 {¶ 10} The trial court granted summary judgment to appellees on all of Manno and Yasenchack's claims except for the breach of contract claim, and denied Manno and Yasenchack's motion for summary judgment on all of their claims. Manno thereafter dismissed her remaining breach of contract claim.
 {¶ 11} Manno and Yasenchack now appeal the judgment of the trial court granting, in part, appellees' motion for summary judgment and denying their cross-motion for summary judgment.
 {¶ 12} Appellate review of summary judgment is de novo. Grafton v.Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241;Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581,585, 706 N.E.2d 860.
 {¶ 13} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp.,73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt,75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.
 {¶ 14} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein,76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 15} With these principles in mind, we consider whether the trial court's judgment granting, in part, appellees' motion for summary judgment, and denying appellants' motion for summary judgment, was appropriate.
 {¶ 16} Initially, Manno and Yasenchack contend that the trial court erred by determining that their claims required analysis and/or interpretation of Church doctrine. Similarly, appellees filed a motion to dismiss with this court arguing that consideration of this appeal would require excessive entanglement with Church doctrine. Upon review of the trial court's opinion and order, however, we find that the trial court did not determine that it needed to analyze and/or interpret Church doctrine. Rather, the court stated that "* * * this Court distinguishes between those claims that are secular in nature and those that require a canonical study. Whether marriage outside the purview of the Catholic Church is valid or moral is not within this Court's jurisdiction * * *." Further, at another point in its opinion, the trial court stated that, "[it] declines to delve into the cannons of the Church to determine the sanctity of marriage and any correlative sanction. * * * Whether such a distinction [between sexual intercourse outside marriage and remarrying without first obtaining an annulment from the Church] merits termination for one and employment for the other is a fine line left for moral theologians. This Court confines itself to the civil law in this case and does not have to reach this issue * * *." Thus, Manno and Yasenchack's contention that the trial court determined that their claims required analysis and/or interpretation of Church doctrine is without merit. Moreover, we can and will address the substantive issues in this case without analyzing and/or interpreting Church doctrine and, therefore, have denied, under separate cover, appellees' motion to dismiss.
A. Age Discrimination
 {¶ 17} To set forth a prima facie case of age discrimination, Manno must show: (1) she is a member of the statutorily-protected class; (2) she was discharged; (3) she was qualified for the position; and (4) that she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. Kohmescher v. Kroger Co.
(1991), 61 Ohio St.3d 501.
 {¶ 18} Once a prima facie case of discrimination is established, the employer may overcome the presumption by coming forward with a legitimate, nondiscriminatory reason for the discharge. Id. The employee must then present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 668. The employee's burden is to prove that the employer's reason was false and that discrimination was the real reason for the discharge. Wagner v. Allied Steel Tractor Co.
(1995), 105 Ohio App.3d 611, 617. Mere conjecture that the employer's stated reason was a pretext for intentional discrimination is an insufficient basis for the denial of a summary judgment motion made by the employer. To meet his or her burden in response to such a summary judgment motion, the plaintiff must produce some evidence that the employer's proffered reasons were factually untrue. Powers v. Pinkerton,Inc. (Jan. 18, 2001), Cuyahoga App. No. 76333.
 {¶ 19} In this case, Manno established the first, second, and third elements of age discrimination, i.e., she is a member of a protected class since she was 47 years old at the time she was terminated, she was terminated from her position, and she was qualified for her position. However, she failed to demonstrate that she was replaced by a person younger than her, or that her termination resulted in the retention of someone younger. First, Manno was replaced by a woman older than her. Specifically, then 52-year-old Vajda replaced Manno. Vadja was in turn replaced by then 48-year-old Roseberry.
 {¶ 20} Next, there is no evidence that Manno's 30-year-old teaching partner's continued employment with St. Felicitas, after becoming pregnant out of wedlock, depended in any way on the termination of Manno. Moreover, even though Manno failed to demonstrate that her termination permitted the retention of an employee who was not a member of the protected class, appellees demonstrated a nondiscriminatory explanation for her termination, i.e., Manno remarried without first obtaining an annulment from the Church, an act the School found inconsistent with "the teachings and mission of the Catholic Church.
 {¶ 21} Thus, the trial court did not err in granting appellees' motion for summary judgment on Manno's age discrimination claim, and denying appellants' motion for summary judgment on same.
B. Negligence
 {¶ 22} It is well settled that the elements of an ordinary negligence suit between private parties are: (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach. Mussivand v. David (1989),45 Ohio St.3d 314, 318, 544 N.E.2d 265. The duty element of negligence is a question of law for the court to determine. Id.
 {¶ 23} "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff."Commerce Industry Ins. Co. v. Toledo (1989), 45 Ohio St.3d 96; see, also, Huston v. Konieczny (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505. The existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271;Commerce Industry, supra; Menifee v. Ohio Welding Products, Inc.
(1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707.
 {¶ 24} Manno contends that appellees failed to warn her that her marriage to Yasenchack without an annulment of her first marriage would lead to her termination. We find Manno's argument to be without merit. Specifically, Manno has failed to demonstrate that appellees had a legal duty to warn her that remarrying without an annulment would result in her termination. Neither the employment contract nor the Faculty Handbook created such a duty. Further, we find that the opinions of Manno's expert, Dr. Elliot, did not create a duty.
 {¶ 25} Accordingly, the trial court did not err in granting appellees' motion for summary judgment on Manno's negligence claim, and denying Manno's motion for summary judgment on same.
C. Intentional Infliction of Emotional Distress
 {¶ 26} To prevail on an intentional infliction of emotional distress claim, Manno must show:
 {¶ 27} "(1) That [Appellees] either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to [Manno]; (2) that [Appellees'] conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it can be considered as `utterly intolerable in a civilized community'; (3) that [Appellees'] actions were the proximate cause of [Manno's] psychic injury; and (4) that the mental anguish suffered by [Manno] is serious and of a nature that `no reasonable man could be expected to endure it." (Internal citations omitted). Pyle v. Pyle (1983), 11 Ohio App.3d 31, 34, 463 N.E.2d 98. See, also, Jarvis v. Gerstenslager Co., 9th Dist. Nos. 02CA0047 and 02CA0048, 2003-Ohio-3165.
 {¶ 28} Upon review, we find that Manno failed to establish that appellees' conduct was extreme and outrageous. In Godfredson v. Hess Clark (C.A.6, 1999), 173 F.3d 365, the Sixth Circuit Court of Appeals held that, "[a]n employee's termination, even if based on discrimination, does not rise to the level of `extreme and outrageous conduct,' without proof of something more."
 {¶ 29} Manno argues that appellees conspired behind her back, then offered her a contract for the 2003-2004 school year, and terminated it approximately one month before the school year started. We do not find that appellees conspired behind Manno's back as she contends. Further, we are unable to find that the fact that Manno's termination came after she signed her contract and close to the start of the school year was extreme and outrageous.
 {¶ 30} Thus, the trial court did not err in granting appellees' motion for summary judgment on Manno's intentional infliction of emotional distress claim, and denying Manno's motion for summary judgment on same.
D. Implied Breach of Contract/Promissory Estoppel
 {¶ 31} An implied contract arises when the circumstances make it reasonably certain that an agreement was intended. Cuyahoga Cty.Hospitals v. Price (1989), 64 Ohio App.3d 410, 416, 581 N.E.2d 1125. In this case, Manno signed a written contract; thus, the trial court properly found that no claim for an implied contract can exist. Similarly, the existence of a written contract barred Manno from maintaining a promissory estoppel claim. See Gallant v. Toledo Pub.School (1992), 84 Ohio App.3d 378.
 {¶ 32} As such, the trial court did not err in granting appellees' motion for summary judgment on Manno's implied breach of contract and promissory estoppel claims, and denying Manno's motion for summary judgment on same.
E. Negligent Misrepresentation
 {¶ 33} The elements of negligent misrepresentation are as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1), applied by the Supreme Court of Ohio in Gutter v. Dow Jones,Inc. (1986), 22 Ohio St.3d 286, 490 N.E.2d 898, and Haddon ViewInvestment Co. v. Coopers Lybrand (1982), 70 Ohio St.2d 154,436 N.E.2d 212.
 {¶ 34} It is significant that a negligent misrepresentation occurs when one supplies false information for the guidance of others. Leal v.Holtvogt (1998), 123 Ohio App.3d 51, 62, 702 N.E.2d 1246, citingTextron Financial Corp. v. Nationwide Mut. Ins. Co. (1996),115 Ohio App.3d 137, 149, 684 N.E.2d 1261. A negligent misrepresentation does not lie for omissions; there must be some affirmative false statement. Leal, supra, at 62, citing Textron, supra, in turn citing Zuber v. Ohio Dept. of Ins. (1986), 34 Ohio App.3d 42,516 N.E.2d 244.
 {¶ 35} Upon review, we do not find any evidence of an affirmative false statement having been made by appellees to Manno. As such, the trial court did not err in granting appellees' motion for summary judgment on Manno's negligent misrepresentation claim, and denying Manno's motion for summary judgment on same.
F. Punitive Damages
 {¶ 36} R.C. 2315.21(B) permits an award of punitive damages in a tort action where the actions or omissions of a defendant demonstrate actual malice and the plaintiff proves actual damages as a result of those actions or omissions. As Manno had no recognizable cause of action in tort, as set forth in this opinion, she further had no right to punitive damages. Therefore, the trial court did not err in granting appellees' motion for summary judgment on Manno's punitive damages claim, and denying Manno's motion for summary judgment on same.
G. Loss of Consortium
 {¶ 37} A cause of action based upon a loss of consortium is a derivative action. That means that the derivative action is dependent upon the existence of a primary cause of action and can be maintained only so long as the primary action continues. Messmore v. Monarch Machine ToolCo. (1983), 11 Ohio App.3d 67, 68-69. Because Manno was unable to successfully maintain her causes of action, Yasenchack's loss of consortium claim must necessarily also fail. Accordingly, the trial court did not err in granting appellees' motion for summary judgment on Yasenchack's loss of consortium claim, and denying Yasenchack's motion for summary judgment on same.
H. Unequal Treatment
 {¶ 38} Throughout Manno and Yasenchack's arguments before both the trial court and this court, they attempt to buttress their various claims by citing other people affiliated with St. Felicitas School and/or Parish who they contend were in violation of certain Church doctrine, but who were not discharged. Manno's 30-year-old teaching partner became pregnant out wedlock but was not terminated. A volunteer parish school religion teacher at the Church is an unwed mother of two. A maintenance man[1]
at the Church is divorced and remarried, without having had his first marriage annulled. We find Manno and Yasenchack's attempt to buttress their claims based upon these people and circumstances unpersuasive.
 {¶ 39} First, in regard to Manno's teaching partner, and as she relates to Manno's age discrimination claim, she did not replace Manno. There is no evidence that the teaching partner's continued employment depended on Manno's termination. Similarly, in regard to Manno's negligence claim, any difference between appellees' treatment of Manno and the teaching partner did not create a duty on appellees' part to warn Manno that her marriage without an annulment would jeopardize her employment.
 {¶ 40} The parish school religion teacher is a volunteer at the Church and, thus, differently situated from Manno. As a volunteer for the Church, she is not subject to an employment contract or the School's Faculty Handbook.
 {¶ 41} Finally, the maintenance man was an employee of the Church, not the School, and was not bound by the same employment contract and the School's Faculty Handbook as was Manno. Moreover, in his job doing maintenance for Church, he rarely, if ever, even saw students from the School.
I. Conclusion
 {¶ 42} The trial court properly granted appellees' motion for summary judgment as to appellants' claims of age discrimination, intentional infliction of emotional distress, negligence, implied breach of contract, promissory estoppel, and negligent misrepresentation. Further, because the trial court properly granted appellees' motion for summary judgment relative to the above-mentioned claims, it also properly found that appellants' claims for punitive damages and loss of consortium must fail. Similarly, the trial court properly denied appellants' motion for summary judgment as to all of their claims.
Judgment affirmed.
It is ordered that appellees recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Kilbane, J., Concur.
[1] Although Manno and Yasenchack do not present any argument relative to the maintenance man in their briefs before this court, they did so in the trial court.