[Cite as *Lakhi v. Meritra Health Care, L.L.C.*, 2022-Ohio-3062.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rani Lakhi et al., | : | |
| Plaintiffs-Appellees, | : | No. 21AP-480 |
| | | (C.P.C. No. 19CV-554) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Meritra Health Care, LLC, et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on September 1, 2022

**On brief:** *Allen Stovall Neuman & Ashton LLP, Todd H. Neuman,* and *Jeffrey R. Corcoran.* **Argued:** *Jeffrey R. Corcoran.*

**On brief:** *Giorgianni Law, LLC,* and *Paul Giorgianni*, for appellants. **Argued:** *Paul Giorgianni.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, P.J.

{¶ 1}  Appellants, Meritra Health Care LLC ("Meritra"), Naveen Bekkam, Pavani Baddam, Chandra Veerla, Suhasini Veerla, Jagruti Patel, Niranjan Patel (collectively "guarantor appellants"), Meritra Health Care Main, LLC, Meritra Health Care Morse, LLC, Meritra Health Care Phillipi, LLC, and Meritra Health Care Granville Pike, LLC (collectively "real estate appellants"), appeal from a decision of the Franklin County Court of Common Pleas granting the motion for summary judgment of appellees, Rani Lakhi (individually "Lakhi"), Amar Lakhi, Nisha Lakhi, Urgent Care Main, LLC, Urgent Care Morse, LLC, and Urgent Care Phillipi, LLC (collectively "Lakhi appellees"), and from a decision and entry denying appellants' motion for reconsideration from the trial court's decision granting summary judgment.  For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On January 22, 2019, Lakhi filed a complaint against appellants for breach of a promissory note, breach of a personal guarantee, unjust enrichment, and promissory estoppel. Pursuant to the complaint, Lakhi was the sole member of Premier Medical Care, LLC, an urgent care medical business, as well as an owner of Addiction Recovery Clinics of Ohio, LLC and Urgent Care Assurance Company Risk Retention Group. On May 16, 2017, Lakhi and Meritra executed a purchase agreement under which Lakhi transferred her interest in Premier Medical Care, LLC, Addiction Recovery Clinics of Ohio, LLC, and Urgent Care Assurance Company Risk Retention Group to Meritra. That same day, Meritra executed a promissory note for $1,100,000 in favor of Lakhi. Additionally that same day, the guarantor appellants executed a personal guarantee of the promissory note of Meritra. In the complaint, Lakhi alleged Meritra failed to make payments as required under the promissory note and that the guarantor appellants refused to perform on the personal guarantee.

{¶ 3} Appellants initially filed a joint answer on May 2, 2019 asserting several affirmative defenses. Subsequently, on September 30, 2019, appellants filed a joint motion for leave to file an amended answer to raise additional affirmative defenses, assert counterclaims, and join additional parties. The trial court granted appellants' motion to file an amended answer and counterclaim on November 14, 2019. The parties then filed a joint stipulation on December 12, 2019 providing appellants leave to again file an amended counterclaim to withdraw certain counterclaims.

{¶ 4} On January 23, 2020, appellants filed their amended counterclaim asserting claims of (1) fraud, (2) breach of contract, (3) negligent nondisclosure, and (4) unjust enrichment. In the amended counterclaim, appellants stated that while Lakhi negotiated the terms of the sale of Premier Medical, Lakhi contemporaneously negotiated with Bekkam for Meritra to purchase four separate real estate parcels leased by Premier Medical and from which Premier Medical conducted its business. Ultimately, Meritra Real Estate Holdings, LLC, of which Bekkam was the sole member, agreed to purchase the four real estate parcels through four separate real estate LLCs, the real estate appellants, with a separate real estate purchase contract relating to each property. Appellants alleged in the counterclaim that Meritra relied on Lakhi's tax returns from 2013 through 2015 as its due

diligence for both the Premier Medical purchase agreement and for the four separate real estate transactions. Appellants alleged it justifiably relied on Lakhi's representations when it agreed to the combined $4,100,000 it agreed to pay for Premier Medical and the four parcels of real property, and that the amount was in excess of the combined commercial value of Premier Medical and the four properties. Of that cumulative total, pursuant to the terms of the purchase agreement, Lakhi sold her entire membership interest in Premier Medical to Meritra for $1,100,000. Meritra paid a total of $3,000,000 under the four separate real estate purchase contracts.

{¶ 5} Additionally in the amended counterclaim, appellants joined additional parties. More particularly, appellants joined as defendants the additional parties of the Lakhi appellees. However, while the amended counterclaim sets forth factual allegations related to the four real estate transactions, the substance of appellants' four counterclaims did not assert specific claims against the Lakhi appellees and instead asserted the four counterclaims solely against Lakhi in connection with her sale of Premier Medical. The amended counterclaim also added as "joined plaintiffs" the additional parties of the real estate appellants. The amended counterclaim set forth four additional claims—fraud, breach of contract, negligent nondisclosure, and unjust enrichment—as "joined plaintiffs' claims against Rani Lakhi and additional joined defendants." (Jan. 23, 2020 Am. Counterclaim at 12.) These claims related to the real estate purchase transactions though they relied on the same allegations of wrongdoing against Lakhi that appellants asserted in their four counterclaims. The joined plaintiffs' claims asked the court to rescind the real estate purchase contracts.

{¶ 6} Also on January 23, 2020, appellants filed a motion for judgment on the pleadings as to Lakhi's claims for breach of the personal guarantee, unjust enrichment, and promissory estoppel. The trial court ultimately denied the motion for judgment on the pleadings in an October 23, 2020 decision and entry.

{¶ 7} Appellees then filed a motion for summary judgment on March 16, 2020 seeking judgment in their favor on Lakhi's claims of breach of the promissory note and breach of the personal guarantee. Additionally, appellees sought summary judgment on all of appellants' counterclaims. Appellants filed a memorandum in opposition to the motion

for summary judgment on March 30, 2020, and appellees filed a reply in support of their motion for summary judgment on April 6, 2020.

{¶ 8} During an October 5, 2020 status conference, appellants requested additional time to complete discovery and file supplemental briefing. The trial court granted appellants leave to file supplemental briefing. Appellants then filed a supplemental memorandum in opposition to the motion for summary judgment on October 26, 2020. In this supplemental memorandum, appellants, for the first time, referred to the report of their expert witness, Robert Evans. Appellees then filed a reply on November 12, 2020, asserting, among other arguments, that the trial court could not consider Evans' report because appellants failed to properly authenticate the report.

{¶ 9} In an April 15, 2021 decision and entry, the trial court granted appellees' motion for summary judgment. The trial court determined it could not consider Bekkam's affidavit as it was self-serving, and that even if it assumed Bekkam's affidavit was not self-serving, appellants nonetheless did not demonstrate a genuine issue of material fact as to whether appellants were defrauded because the affidavit was inconsistent with Bekkam's deposition testimony. Further, the trial court determined it would not consider Evans' expert report because appellants failed to submit a properly framed affidavit incorporating the expert report. Ultimately, the trial court determined Lakhi was entitled to summary judgment on her claims of breach of contract and breach of the personal guarantee, and the trial court further determined appellees were entitled to summary judgment on appellants' counterclaims of breach of contract, fraud, negligent nondisclosure, and unjust enrichment. The trial court directed counsel for appellees to prepare, circulate, and submit an appropriate judgment entry consistent with the decision.

{¶ 10} Following the trial court's decision granting summary judgment, appellants filed a motion for reconsideration of the decision. Appellants argued the trial court erred in failing to consider the Evans report and the Bekkam affidavit. Appellees opposed the motion for reconsideration in a May 6, 2021 memorandum contra.

{¶ 11} On September 20, 2021, the trial court issued a decision and entry denying appellants' motion for reconsideration. That same day, the trial court issued a final judgment entry journalizing its decision granting summary judgment in favor of appellees

and finding appellants jointly and severally liable to Lakhi in the amount of $1,126,124.70 plus interest.  Appellants timely appeal.

## II.  Assignments of Error

{¶ 12} Appellants assign the following errors for our review:

> 1. The court erroneously refused to consider the report of expert witness Robert Evans.
>
> 2. The court erroneously refused to consider the sworn deposition testimony of expert witness Robert Evans.
>
> 3. The court erroneously refused to consider Dr. Bekkam's affidavit.
>
> 3.a The court erred by applying the "self-serving affidavit" doctrine to Dr. Bekkam's affidavit.
>
> 3.b The court erroneously found disqualifying conflict between Bekkam's affidavit and Bekkam's deposition testimony.
>
> 4. The court erroneously granted summary judgment.
>
> 5. The court erroneously overruled Appellants' motion for reconsideration.

## III.  Standard of Review and Applicable Law

{¶ 13} An appellate court reviews summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 10th Dist. No. 20AP-563, 2021-Ohio-3898, ¶ 9.  Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 14} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  However, the moving party cannot discharge its initial burden under this rule

with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## IV. First, Second, Third, and Fourth Assignments of Error – Evidentiary Rulings and Motion for Summary Judgment

{¶ 15} Appellants' first, second, third, and fourth assignments of error are interrelated, and we address them jointly. In their first assignment of error, appellants argue the trial court erred in refusing to consider Evans' expert report. In their second assignment of error, appellants argue the trial court erred in refusing to consider Evans' deposition testimony. In their third assignment of error, appellants argue the trial court erred in refusing to consider Bekkam's affidavit. In their fourth assignment of error, appellants argue the trial court erred in granting appellees' motion for summary judgment.

{¶ 16} The crux of appellants' fourth assignment of error is that had the trial court properly considered the Evans report, the Evans deposition testimony, and the Bekkam affidavit, the trial court would have been compelled to conclude there remained genuine issues of material fact as to Lakhi's claims of breach of the promissory note and breach of the personal guarantee and appellants' counterclaims of breach of contract, fraud, negligent nondisclosure, and unjust enrichment and, thus, should have denied the motion for summary judgment. We will assume arguendo that the trial court should have considered the Evans report, the Evans deposition testimony, and the Bekkam affidavit, and we will consider the disputed evidence in our determination of whether the trial court erred in granting appellees' motion for summary judgment under appellants' fourth assignment of error.

### A. Breach of Promissory Note

{¶ 17} Lakhi asserted a claim of breach of the promissory note against Meritra. "As a matter of law, a promissory note is considered a contract." *Morgan v. Mikhail*, 10th Dist.

No. 08AP-87, 2008-Ohio-4598, ¶ 66 (noting a promissory note is a written promise to unconditionally pay a certain sum of money at a future time), citing *Gray Printing Co. v. Blushing Brides, LLC*, 10th Dist. No. 05AP-646, 2006-Ohio-1656, ¶ 30 (a promissory note constitutes a separate enforceable contract and is an independent entity). To succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen-Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.).

{¶ 18} Here, the parties do not dispute that the promissory note existed and was a valid contract and that Meritra has not paid the promissory note and still owes Lakhi $1,126,124.70 on the promissory note. The issue here is whether appellants' allegations of fraud excuse Meritra's nonpayment of the promissory note.

{¶ 19} " 'A claim of fraudulent inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation.' " *Am. Outdoor Advertising Co., LLC v. P&S Hotel Group, Ltd.*, 10th Dist. No. 09AP-221, 2009-Ohio-4662, ¶ 31, quoting *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502 (1998). In a claim of fraudulent inducement, the fraud relates to the facts inducing the execution of the agreement rather than to the nature or purport of the agreement itself. *Id.*, citing *ABM Farms* at 502, citing *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 14 (1990). To prove fraudulent inducement as an affirmative defense, appellants must establish that (1) Lakhi made a knowing, material misrepresentation, (2) with the intent of inducing appellants' reliance, and (3) appellants relied upon that misrepresentation to their detriment. *Id.*, citing *ABM Farms* at 502, citing *Beer v. Griffith*, 61 Ohio St.2d 119, 123 (1980).

{¶ 20} Appellants base their affirmative defense of fraudulent inducement upon the allegation that Lakhi misled appellants into paying an above-market price for Premier Medical by refusing to provide financial records and failing to disclose Premier Medical's declining revenue after 2015. However, even considering the disputed evidence that the trial court did not consider, appellants fail to demonstrate there remains a genuine issue of material fact on the elements of fraudulent inducement. Appellants point to Bekkam's October 29, 2019 deposition testimony that Lakhi "simply wouldn't" provide the requested

financial documentation for Premier Medical from 2016 as proof of Lakhi's material misrepresentation. (Bekkam Dep. at 84.) As Bekkam admitted in his March 30, 2020 affidavit, however, Lakhi did eventually provide the requested financial information.

{¶ 21} Moreover, even if we were to somehow construe Lakhi's delayed disclosure of the requested financial documentation as constituting a misrepresentation for purposes of a claim of fraudulent inducement, appellants do not point to any Civ.R. 56 evidence that they *relied* on these misrepresentations in agreeing to purchase Premier Medical. As noted above, a claim for fraudulent inducement will fail where the party cannot demonstrate it relied on the material misrepresentation. *Am. Outdoor Advertising Co.* at ¶ 31. Here, Bekkam testified at his deposition that even though he viewed Lakhi as not cooperating with the financial disclosures, he nonetheless decided to proceed with the purchase of Premier Medical despite the possible risks. The following exchange occurred during his deposition:

> Q. So why did you go forward with it at that point if you weren't getting what you asked for?
>
> A. That's why the -- you know, it was part of negotiations, that the risk was increasing because she wouldn't provide any information, so our cash down went down. We said, "If you don't want to provide anything, you can put zero down." That's part of the negotiations.
>
> Q. So because she wasn't providing the couple documents that you were asking for, you negotiated the price down because you felt you had more risk?
>
> A. And zero down. You know, we weren't going to put anything down.
>
> Q. Is that how that all came to be though I mean?
>
> A. Pretty much.
>
> Q. So you understood that because you weren't getting the documents that you asked for, you were incurring more risk so you wanted to change the financial arrangement of the deal?
>
> A. Yes.

Q. And part of that assumption of more risk was you put no money down?

A. Yes.

Q. Was there other changes other than that?

A. That's the big one.

Q. Okay. But were there others, though? I understand it was a big one.

A. I don't recall the details, but it -- the discussions evolved to the point where we didn't want to, you know, risk too much by putting money down.

Q. Okay. So when you're not getting the bank statements and the billing records that you asked for, despite having this due diligence provision that says you're entitled to it, you knew at that point you were assuming a lot more risk, right?

A. Of course, yes.

Q. Okay. But you felt in your mind it wasn't enough risk to stop going forward? You were still comfortable going forward?

A. Yeah. We went through with it, yeah.

(Bekkam Dep. at 84-85.) Bekkam additionally testified that Meritra had the opportunity to inspect and analyze Premier Medical's financial information before completing the purchase. Thus, the evidence provided on summary judgment demonstrates appellants did not rely on Lakhi's failure to provide financial documentation.

{¶ 22} Additionally, appellants argue Evans' expert report demonstrates a genuine issue of material fact as to whether they were fraudulently induced to agree to the purchase of Premier Medical. Specifically, appellants rely on Evans' statement in his report that "the large decrease in revenue [in 2016 and 2017] * * * was so material as to deserve detailed and explicit disclosure. Based on my experience, buyers would expect disclosure and sellers would disclose it in order to avoid potential liability." (Ex. 1, Evans' Report at 4, attached to Defs.' Oct. 26, 2020 Memo Contra.) Despite Evans' opinion that Lakhi should have specifically disclosed the large decrease in revenue, appellants still cannot demonstrate

they relied on Lakhi's representations of Premier Medical's financial information. To the contrary, Lakhi provided Civ.R. 56 evidence that she informed appellants that Premier Medical did not perform well in 2016. The original draft of the Purchase Agreement contained a representation that Premier Medical had gross revenues "in excess of $1,500,000 per calendar year," that "patient count for 2016 was in excess of 15,000 patients," and that "to date in 2017 no events have occurred to significantly change the 2016 gross revenue or patient count." (Dep. Ex. 3, Original Purchase Agreement Draft, Section 13(a), attached to Pls.' Mar. 16, 2020 Mot. for Summ. Jgmt.) In a May 10, 2017 email to Bekkam, Lakhi specifically stated that this representation needed to be removed, writing "[y]ou are aware we did not do well for 2016 and [section] 13(a) needs to be removed." (Dep. Ex. 4, May 10, 2017 Email, attached to Pls.' Mar. 16, 2020 Mot. for Summ. Jgmt.) The parties removed the representation from the final version of the Purchase Agreement.

{¶ 23} Thus, even taking into account the disputed evidence, appellants are unable to demonstrate there remain any genuine issues of material fact on their affirmative defense of fraudulent inducement. As the evidence demonstrates there remain no genuine issues of material fact on Lakhi's claim for breach of the promissory note, the trial court did not err in granting summary judgment to Lakhi on this claim.

### B. Breach of the Personal Guarantee

{¶ 24} Lakhi also sought summary judgment on her claim of breach of the personal guarantee against the guarantor appellants.

{¶ 25} "Under Ohio law, '[a] guaranty is a contract through which one party guarantees payment for debts incurred by another person or entity.' " *LB-RPR REO Holdings, LLC v. Ranieri*, 10th Dist. No. 11AP-471, 2012-Ohio-2865, ¶ 23, quoting *Thayer v. Diver*, 6th Dist. No. L-07-1415, 2009-Ohio-2053, ¶ 77. "Generally, a guaranty is an independent contract separate from and collateral to the original contract of the principal." *Altercare of Canal Winchester Post-Acute Rehab. Ctr., Inc. v. Turner*, 10th Dist. No. 18AP-466, 2019-Ohio-1011, ¶ 17, citing *LB-RPR REO Holdings* at ¶ 23. Here, there is no dispute that the personal guarantee was a contract and that the guarantor appellants had failed to make payments under the terms of the guarantee. The issue, again, was whether the guarantor appellants' claim of fraudulent inducement excused their nonperformance.

{¶ 26} Appellants again argue there remain genuine issues of material fact as to whether they were fraudulently induced into providing the personal guarantee, relying on the same evidence they pointed to in response to Lakhi's claim of breach of the promissory note. For the same reasons that we explained in our resolution of Lakhi's breach of the promissory note claim, appellants are unable to point to any evidence demonstrating a genuine issue of material fact that they were fraudulently induced to provide the personal guarantee. Accordingly, the trial court did not err in granting Lakhi summary judgment on her claim of breach of the personal guarantee.

### C. Counterclaim – Breach of Contract

{¶ 27} Appellants argue the trial court erred in granting Lakhi summary judgment on their counterclaim of breach of contract.

{¶ 28} The construction and interpretation of written contracts involve questions of law that this court reviews de novo. *McKeny v. Ohio Univ.*, 10th Dist. No. 17AP-392, 2017-Ohio-8589, ¶ 19, citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. The purpose of the contract construction is to realize and give effect to the intent of the parties. *Id.*, citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). When " 'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' " *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, ¶ 12, quoting *Shifrin* at 638.

{¶ 29} Here, appellants argue the trial court erred when it concluded there remained no genuine issue of material fact that Lakhi did not breach the contract with Meritra when she failed to disclose Premier Medical's declining financial circumstances. As noted above, to succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen-Krupp Elevator Corp.* at ¶ 13.

{¶ 30} The parties agree the Purchase Agreement was a valid contract between Lakhi and Meritra. The issue on summary judgment was whether appellants demonstrated a breach of that contract when Lakhi failed to more specifically disclose the declining

financial situation of Premier Medical from 2016 to 2017. The pertinent contract language is found in Section 14(c) of the Purchase Agreement and provides that Lakhi "represents and warrants to Purchaser that * * * to date in 2017 no significant events have occurred that could significantly impact the way the business has operated thus far." (Dep. Ex. 6, Purchase Agreement Section 14(c), attached to Pls.' Mar. 16, 2020 Mot. for Summ. Jgmt.) Appellants contend the decline in revenue in 2016 and 2017 constitutes a "significant event" as that term is used in the Purchase Agreement.

{¶ 31} In support of their argument, appellants rely on Evans' report in which Evans opines that Lakhi's failure to provide "detailed and explicit disclosure" of the "large decrease in revenue" constituted a failure to satisfy Section 14(c) of the Purchase Agreement. Appellants argue that, at minimum, Evans' report creates a genuine issue of material fact as to whether Lakhi breached the Purchase Agreement. However, we are mindful that in the context of summary judgment, an expert witness may provide opinion or inferences based on underlying facts or data, but the court need not defer to improper legal conclusions. *See Bliss v. Manville*, 6th Dist. No. L-20-1091, 2021-Ohio-1673, ¶ 22 (noting "Civ.R. 56 and the Rules of Evidence regarding expert opinion testimony require affidavits to set forth facts and not legal conclusions"); *Sheet Metal Workers, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 (6th Cir.2001), fn. 4 (stating "the construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible").

{¶ 32} Moreover, we do not agree with appellants that Premier Medical's declining financial circumstances spanning from 2016 through the midway point of 2017 constitutes a "significant event" that Lakhi failed to disclose within the meaning of the Purchase Agreement. First, while the Purchase Agreement does not define the term "significant event," by its ordinary meaning, an event is "something that happens," or an "occurrence." *See* https://www.merriam-webster.com/dictionary/event (accessed Aug. 31, 2022). Appellants do not point to a particular moment or occurrence that precipitated a change in the operations of the business. Instead, appellants would have the court construe the entire financial record-keeping of the business as constituting a significant event. Even by appellants' own expert witness's testimony, however, the downturn in Premier Medical's

business occurred over a number of years, beginning in 2014. We will not construe the years-long gradual decline in business as constituting a significant event that Lakhi did not disclose. Rather, as the decline in business revenue began in 2014 and continued through 2017, the revenue decline is more indicative of Premier Medical's normal business operations rather than evidence of a departure from normal business operations.

{¶ 33} Additionally, as we explained in our resolution of Lakhi's claim for breach of the promissory note, the undisputed evidence presented on summary judgment demonstrated that Lakhi did disclose to Meritra that Premier Medical's revenue took a downward turn during 2016, in part as a result of Lakhi's cancer diagnosis, a fact she also disclosed to appellants. Bekkam testified that even though he believed Lakhi should have been more forthcoming about Premier Medical's financial situation, he chose to proceed with the purchase of Premier Medical even despite the risk that the business was in decline. By all accounts, Premier Medical's revenue had been in decline beginning in 2014. Though appellants now assert they were unaware of the severity of the decline in 2016 and 2017, they cannot salvage their own lack of due diligence by asserting a breach of contract claim.

{¶ 34} Thus, because appellants cannot demonstrate there remains any genuine issues of material fact on their counterclaim of breach of contract, summary judgment in favor of Lakhi was appropriate.

### D. Counterclaim – Fraud

{¶ 35} Appellants next argue the trial court erred in granting summary judgment in favor of Lakhi on their counterclaim of fraud.

{¶ 36} To prevail on a fraud claim, "a plaintiff must prove: (1) a representation, or if a duty to disclose exists, concealment of a fact, (2) that is material to the transaction at issue, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Andrew v. Power Marketing Direct, Inc.*, 10th Dist. No. 11AP-603, 2012-Ohio-4371, ¶ 49, citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 73 (1986).

{¶ 37} Appellants assert Lakhi concealed the full extent of Premier Medical's revenue decline with the intent of misleading Meritra into completing the purchase of the

business. Again, we reiterate that the undisputed evidence at summary judgment was that Lakhi did disclose that patient counts and revenue were declining in 2016 and 2017. Further, as we explained in our resolution of Lakhi's claim for breach of the promissory note, even if we were to agree with appellants that Lakhi concealed the financial state of the business, there is no evidence that appellants relied on Lakhi's depiction of the financial situation of the business. Instead, in his deposition testimony, Bekkam agreed he was entitled to the financial documents of Premier Medical, had the opportunity to review the documents, and decided to move ahead with the purchase despite the risks. Accordingly, appellants fail to demonstrate there remains a genuine issue of material fact with respect to their counterclaim of fraud. The trial court did not err in granting summary judgment to Lakhi on this counterclaim.

### E.  Counterclaim – Negligent Nondisclosure

{¶ 38} Appellants additionally asserted a counterclaim of negligent nondisclosure. As this court recently noted, "[n]egligent misrepresentation occurs when one supplies false information for the guidance of others in their business transactions." *Jones v. Carpenter*, 10th Dist. No. 17AP-401, 2019-Ohio-619, ¶ 55, citing *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 90, citing *Manno v. St. Felicitas Elementary School*, 161 Ohio App.3d 715, 2005-Ohio-3132, ¶ 34 (8th Dist.). However, " '[a] negligent misrepresentation does not lie for omissions; there must be some affirmative false statement.' " *Id.*, quoting *Manno* at ¶ 34.

{¶ 39} Here, even construing appellants' allegations that Lakhi negligently *misrepresented* the financial situation of Premier Medical in the negotiation process, we reiterate again that the undisputed Civ.R. 56 evidence demonstrated that Lakhi informed appellants that Premier Medical was in decline in 2016 and 2017, that appellants had the opportunity to obtain Premier Medical's financial information prior to closing the sale, and that Meritra decided to proceed with the sale despite risks related to Premier Medical's financial situation. Appellants cannot demonstrate a genuine issue of material fact as to whether Lakhi supplied them with false information as guidance on the business transaction. The trial court did not err in granting Lakhi summary judgment on appellants' counterclaim.

### F. Counterclaim – Unjust Enrichment

{¶ 40} Appellants' final counterclaim is one for unjust enrichment. "The doctrine of unjust enrichment 'applies when a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party.' " *Garb-Ko, Inc. v. Benderson*, 10th Dist. No. 12AP-430, 2013-Ohio-1249, ¶ 25, quoting *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 16 (10th Dist.). The elements of an unjust enrichment claim are (1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to allow the defendant to retain the benefit without payment to the plaintiff. *Id.*, citing *Meyer* at ¶ 37, citing *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 10th Dist. No. 08AP-487, 2009-Ohio-2164, ¶ 33.

{¶ 41} Because unjust enrichment is an equitable remedy, this doctrine does not apply when a contract exists between the parties covering the same subject. *Pohmer v. JPMorgan Chase Bank, N.A.*, 10th Dist. No. 14AP-429, 2015-Ohio-1229, ¶ 21, citing *Corbin v. Dailey*, 10th Dist. No. 08AP-802, 2009-Ohio-881, ¶ 10, citing *Hummel v. Hummel*, 133 Ohio St. 520, 525-28 (1938). Having concluded that the Purchase Agreement, promissory note, and personal guarantee were valid contracts, appellants' claim for unjust enrichment fails as a matter of law.

### G. Counterclaims – Real Estate Appellants

{¶ 42} Appellants additionally assert that their arguments with respect to each of the four counterclaims—breach of contract, fraud, negligent nondisclosure, and unjust enrichment—apply equally to the claims of the real estate appellants brought as joined plaintiffs' claims against appellees. Through those four joined plaintiffs' claims, the real estate appellants do not argue that Lakhi or the Lakhi appellees breached any particular provision of any of the four separate real estate purchase contracts related to the four parcels of real estate. Instead, the real estate appellants entities assert that the sale of Premier Medical was integrated with the sale of the four real estate parcels such that any wrongdoing on behalf of Lakhi with respect to the Purchase Agreement for Premier Medical would have the effect of invalidating the four separate real estate purchase contracts. Appellees respond that the real estate purchase contracts were entirely separate transactions from the Premier Medical Purchase Agreement.

{¶ 43} We need not determine whether appellants are correct that Premier Medical and the real estate parcels were an integrated business. Having already determined that appellants cannot demonstrate any genuine issue of material fact remains on any of the four counterclaims asserted against Lakhi for her conduct related to the disclosure of financial information related to Premier Medical, the four additional joined plaintiffs' claims must similarly fail as they all depend on the same allegations of wrongdoing.

### H. Granting of Motion for Summary Judgment

{¶ 44} In summation, even considering the disputed evidence the trial court refused to consider, appellants are unable to demonstrate there remain any genuine issues of material fact on any of Lakhi's claims, their own counterclaims, or the additional joined plaintiffs' claims. Thus, to the extent the trial court erred in refusing to consider the disputed evidence, the error was harmless. *See Brown v. CDS Transp., Inc.*, 10th Dist. No. 10AP-46, 2010-Ohio-4606, ¶ 22, fn. 1 ("because our review [of a motion for summary judgment] is de novo, any error made by the trial court in considering the evidence is harmless"). Because the trial court ultimately did not err in granting appellees' motion for summary judgment, we overrule appellants' first, second, third, and fourth assignments of error.

## V. Fifth Assignment of Error – Motion for Reconsideration

{¶ 45} In their fifth and final assignment of error, appellants argue the trial court erred in denying their motion for reconsideration filed after the trial court issued its decision granting the motion for summary judgment but before the trial court issued its final judgment in the case. An appellate court reviews a trial court's decision on a motion for reconsideration of an interlocutory order for an abuse of discretion. *Tatsing v. Njume-Tatsing*, 10th Dist. No. 16AP-827, 2017-Ohio-8460, ¶ 9, citing *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, ¶ 53 (10th Dist.); *M.S. v. J.S.*, 6th Dist. No. L-19-1234, 2020-Ohio-5550, ¶ 10. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 46} Through their motion for reconsideration, appellants asked the trial court to reconsider its evidentiary rulings and consider the motion for summary judgment with the disputed evidence. However, we have determined that even considering the disputed evidence, summary judgment in favor of appellees was still appropriate. Thus, the trial

court did not abuse its discretion in denying appellants' motion for reconsideration and entering final judgment in favor of appellees, and we overrule appellants' fifth and final assignment of error.

## VI.  Disposition

{¶ 47}  Based on the foregoing reasons, even considering the disputed evidence, the trial court did not err in granting summary judgment to Lakhi on her claims of breach of the promissory note and breach of the personal guarantee, nor did the trial court err in granting summary judgment to appellees on appellants' counterclaims of breach of contract, fraud, negligent nondisclosure, and unjust enrichment.  Having overruled appellants' five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON and NELSON, JJ., concur.

NELSON, J., retired, formerly of the Tenth Appellate District,
assigned to active duty under authority of Ohio Constitution,
Article IV, Section 6(C).

_____